[Cite as *Lower Valley Farm, L.L.C. v. Croskey*, 2018-Ohio-814.]

STATE OF OHIO MAHONINGCOUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| LOWER VALLEY FARM, LLC, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO.16 HA 0010 |
| V. | ) | 16 HA 0011 |
| | ) | 16 HA 0012 |
| JOHN WILLIAM CROSKEY, ET AL, | ) | OPINION |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from Court of Common Pleas of Harrison County, Ohio Case No. CVH-2015-0006

JUDGMENT: Affirmed in Part.
Reversed in Part.

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: March 6, 2018

APPEARANCES:
For Plaintiff-Appellee

Attorney Gregory W. Watts
Attorney Matthew W. Onest
Attorney David E. Butz
4775 Munson Street, N.W.
Canton, Ohio 44735-6963

For Defendants-Appellants

Attorney R. Jeffrey Pollock
Attorney Erin K. Walsh
600 Superior Avenue, Suite 2100
Cleveland, Ohio 44114

Attorney A. Jenna Hokes
105 Jamison Avenue
Cadiz, Ohio  43907

Attorney Marquette D. Evans
602 Main Street, Suite 307
Cincinnati, Ohio 45202

Attorney Michael C. Bednar
4110 Sunset Boulevard
Steubenville, Ohio 43952

DONOFRIO, J.

**{¶1}** Defendants-appellants, John Croskey, et al., appeal from a Harrison County Common Pleas Court judgment granting summary judgment in favor of plaintiff-appellee, Lower Valley Farm, L.L.C., on Lower Valley's claim to quiet title to certain oil and gas rights.

**{¶2}** This case involves the oil and gas rights underlying two parcels of property in Harrison County. The first parcel is part of the Section 16 Property and is comprised of 111.397 acres. The second parcel is part of the Section 22 Property and is comprised of 5.61 acres.

**{¶3}** Prior to 1962, the Pittsburgh Consolidation Coal Company owned the surface of the Section 16 Property and the surface plus 1/3 of the oil and gas rights underlying the Section 22 Property. The remaining oil and gas was subject to three different deeds. The first deed was from Samuel and Blanche Porter conveying a 1/3 interest in the Section 16 Property and the Section 22 Property, in which they reserved all of the oil and gas underlying the conveyed property (Porter Deed). The second deed was from Emma Croskey conveying a 1/3 interest in the Section 16 Property and the Section 22 Property, in which she reserved all of the oil and gas underlying the conveyed property (Croskey Deed). The third deed was from Eliza Mae Corbley conveying a 1/3 interest in the Section 16 Property, in which she reserved all of the oil and gas underlying the conveyed property (Corbley Deed). There was also a deed from Eliza Mae and William Corbley, without any reservation of oil and gas, of a 1/3 interest in the Section 22 Property.

**{¶4}** In 1962, Consolidation Coal Company (Consol), successor in interest to the Pittsburgh Consolidation Coal Company, sold the surface rights of the Section 16 Property and the Section 22 Property to Edward Seleski (Consolidation Deed). Consol reserved all oil and gas rights that it had, which was the 1/3 interest underlying the Section 22 Property.

**{¶5}** Seleski died on February 25, 1999. In 2001, Consol conveyed its 1/3 interest in the oil and gas rights underlying the Section 22 Property to Seleski's Estate (the Seleski Estate). The Seleski Estate then conveyed the Section 16

Property and the Section 22 Property to Michael and Cheryl Wilt (Wilt Deed). That deed contained the following language:

> It is the purpose and intent of the Grantor to sell, bargain and convey to the Grantees herein all its right, title and interest in and to the subject premises, which it owns by virtue of instruments recorded in Deed Volume 148 Page 356 and Deed Volume 148 page 417, and Deed Volume 161 Page 682, records of Harrison Co., Ohio, TOGETHER WITH certain rights acquired by the Grantor by instrument recorded in Official Record Volume __ Page __, Records of Harrison Co., Ohio. The rights conveyed to the Grantor herein in the instrument in Official Record Volume __ Page__ and being conveyed in this instrument are only those pertaining to the surface of the subject premises. All other rights not pertaining to surface mining and <u>acquired</u> by the Grantor in the instrument recorded in Official Record Volume __ Page __ are specifically excepted and reserved to the Grantor, its successors, assigns and beneficiaries. The purpose and intent of this transfer is to permit the usage of the surface for mining related purposes with the consent of the Grantees herein.
>
> However, it is the intent of the grantor to convey all coal, minerals and mining rights to the premises that Edward L. Seleski owned at the time of his death.

(Brief in opposition to Plaintiff's Motion for Summary Judgment, Ex. E).

{¶6} On December 11, 2001, The Seleski Estate conveyed its 1/3 interest in the oil and gas rights underlying the Section 22 Property to Lower Valley's predecessor in interest. By deed dated October 25, 2013, that 1/3 interest in the oil and gas underlying the Section 22 Property was conveyed to Lower Valley. That 1/3 interest is not at issue in this appeal.

{¶7} On December 23, 2010, John Croskey filed an Affidavit Preserving

Minerals to preserve the oil and gas rights underlying the Section 16 Property and the Section 22 Property (Croskey Affidavit) on his behalf as well as on behalf of the Croskey Defendants. (Complaint Ex. 9).

{¶8} George and Marilyn Monzula are the surface owners of 51.5 acres of property also located in the Section 16 Property (the Monzula Property).

{¶9} On November 24, 2014, Lower Valley filed a complaint against John Croskey and 41 other defendants, and the Monzulas seeking a declaratory judgment and to quiet title to certain oil and gas rights underlying property in Harrison County in its name by virtue of the 1989 Ohio Dormant Mineral Act (ODMA). A number of the defendants (the Croskey Defendants) filed a counterclaim claiming title to the severed mineral interest as successors to the original mineral interest holders.

{¶10} The parties filed competing motions for summary judgment.

{¶11} The Croskey Defendants argued that pursuant to the 2006 ODMA, they filed a timely affidavit to preserve their mineral interests. Lower Valley argued that pursuant to the 1989 ODMA, the Croskey Defendants' severed mineral interest were abandoned as a matter of law and those interests were vested in Lower Valley.

{¶12} Meanwhile, Lower Valley and the Monzulas reached a Settlement Agreement. But on May 9, 2016, Lower Valley filed a motion to enforce the Settlement Agreement against the Monzulas. The Monzulas field a response in opposition and a motion to vacate the Settlement Agreement. The trial court granted the Monzulas' motion to vacate the Settlement Agreement and denied Lower Valley's motion to enforce the Settlement Agreement.

{¶13} The trial court then granted Lower Valley's summary judgment motion in part and denied the Croskey Defendants' summary judgment motion. It also denied Lower Valley's summary judgment motion as to the Monzulas. In so doing, the trial court found that the 1989 ODMA applied to this case. It found that no savings event occurred in the time permitted by the 1989 ODMA to preserve the Croskey Defendants' oil and gas interests. Therefore, the court found that at the time of Seleski's death on February 25, 1999, Seleski owned all of the surface rights in

question, all of the oil and gas rights underlying the Section 16 Property, and 2/3 of the oil and gas rights underlying the Section 22 Property. It went on to find that on August 20, 2001, the Seleski Estate purchased the remaining 1/3 oil and gas interest underlying the Section 22 Property. Also on August 20, 2001, the Seleski Estate conveyed to the Wilts all of the property at issue and the deed contained the language "all coal, mineral and mining rights to the premises that Edward L. Seleski owned at the time of his death." The Seleski Estate did reserve a 1/3 oil and gas interest in the Section 22 Property. The trial court then concluded that pursuant to the 1989 ODMA, Seleski owned all of the remaining oil and gas at the time of his death and the Seleski Estate transferred those interests to the Wilts on August 20, 2001.

{¶14} One of the Croskey Defendants filed a timely notice of appeal on July 12, 2016 (case number 16-HA-0010).[1] Sixteen more of the Croskey Defendants filed a timely notice of appeal on July 14, 2016 (case number 16-HA-0011).[2] And 21 additional Croskey Defendants filed a timely notice of appeal on July 19, 2016 (case number 16-HA-0012).[3] This court consolidated the three appeals.[4]

{¶15} An appellate court reviews the granting of summary judgment de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper.

{¶16} A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving

---

1 That defendant is Harriet Evans.
2 Those defendants are William Kalbaugh, Bob Bishop, Jane Varda, Jean Pritchard, Samuel Boak, William Boak, Harry Davis, Thomas Davis, Richard Davis, Harry Kalbaugh, Michael Kalbaugh, Jennifer Kalbaugh Bernay, Karen Chaney, Patty Hausman, Linda Boyd, and Terri Hocker.
3 Those defendants are Ian Resources, L.L.C., John Croskey, Mary Surrey, Emma Croskey, Margaret Turner, Mary Morgan, Martha Beard, Lee Johnson, Edwin Johnson, Theodore Zitko, David Porter, Joann Wesley, Andy Weine, Lorna Bower, Samuel Boak, Everett Porter, Stuart Porter, Brian Porter, Kim Berry, Roy Surrey, and Elaine Porter.
4 Lower Valley has filed a separate appeal as to this judgment and a judgment denying its motion to enforce a settlement agreement against the Monzulas. See 16-HA-0013.

party. *Mercer v. Halmbacher*, 9th Dist., 2015-Ohio-4167, 44, 44 N.E.3d 1011 N.E.3d 1011, ¶ 8; Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

**{¶17}** The Croskey Defendants now raise a single assignment of error.

**{¶18}** The Croskey Defendants' assignment of error states:

> THE TRIAL COURT'S DECISION WHICH HELD THAT THE 1989 DMA APPLIES AND IS SELF-EXECUTING MUST BE REVERSED IN LIGHT OF THE OHIO SUPREME COURT'S DECISION IN CORBAN V. CHESAPEAKE EXPLORATION, L.L.C.

**{¶19}** The Croskey Defendants assert the trial court's judgment that Seleski owned all of the oil and gas rights at the time of his death must be reversed in light of the Ohio Supreme Court's holding in *Corban v. Chesapeake Expl., L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089. They claim that under *Corban*, all of the oil and gas underlying the Section 16 Real Estate and 2/3 of the oil and gas underlying the Section 22 Real Estate is owned by them.

**{¶20}** In *Corban*, ¶ 26-28, the Ohio Supreme Court held that the 1989 ODMA was not self-executing and did not automatically transfer a mineral rights interest from the mineral rights holder to the surface owner by operation of law. Instead, a surface owner seeking to merge those rights with the surface estate under the 1989 ODMA was required to commence a quiet title action seeking a decree that the dormant mineral interest was deemed abandoned. *Id.* at ¶ 28.

**{¶21}** The 2006 ODMA provides that a dormant mineral interest "shall be deemed abandoned and vested in the owner of the surface of the lands subject to the interest if the requirements established in division (E) of this section are satisfied." *Id.* at ¶ 29; R.C. 5301.56(B). The Court went on to hold:

> Dormant mineral interests did not automatically pass by operation of law to the surface owner pursuant to the 1989 law. Thus, as of June 30, 2006, any surface holder seeking to claim dormant mineral rights and merge them with the surface estate is required to follow the statutory notice and recording procedures enacted in 2006 by H.B. 288. These procedures govern the manner by which mineral rights are deemed abandoned and vested in the surface holder and apply equally to claims that the mineral interests were abandoned prior to June 30, 2006.

*Id.* at ¶ 31.

**{¶22}** The Ohio Supreme Court reiterated its holding stating "the 2006 version of the Dormant Mineral Act applies to all claims asserted after 2006 alleging that the rights to oil, gas, and other minerals automatically vested in the owner of the surface estate prior to the 2006 amendments." *Walker v. Shondrick-Nau*, 149 Ohio St.3d 282, 2016-Ohio-5793, 74 N.E.3d 427, ¶ 16, citing *Corban* at ¶ 2.

**{¶23}** In the present case, the trial court applied the 1989 ODMA. Thus, the trial court's judgment must be reversed based on *Corban*. The 2006 ODMA applies to this case.

**{¶24}** Lower Valley did not assert a claim under the 2006 ODMA. In their summary judgment motion, the Croskey Defendants asserted that they would prevail under the 2006 ODMA. Additionally, Lower Valley acknowledged that the Croskey Defendants filed an affidavit to preserve their mineral interest on December 23, 2010. (Complaint ¶ 71, Ex. 9).

**{¶25}** The only question that remains is whether we should enter judgment in favor of the Croskey Defendants or whether this matter should be remanded to the

trial court. Lower Valley contends a remand is necessary so that the trial court can address various defenses it raised.

**{¶26}** A remand is not necessary in this case. The Croskey Defendants properly filed the Croskey Affidavit on December 23, 2010, pursuant to the 2006 ODMA, which preserved their interests. As the Croskey Defendants point out, this court previously held that the Croskey Affidavit satisfied the requirements of the 2006 ODMA and the Ohio Supreme Court affirmed our decision. *Dodd v. Croskey*, 7th Dist. No. 12 HA 6, 2013-Ohio-4257, aff'd, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147.

**{¶27}** Lower Valley contends an ambiguity exists in the deed conveying the property to the Wilts as to the oil and gas rights conveyed to the Wilts. But any ambiguity in the deed conveying the property to the Wilts is irrelevant because the oil and gas rights were reserved by the Porter, Croskey, and Corbley Deeds. Thus, a remand on this issue is unnecessary.

**{¶28}** Lower Valley also contends the Seleski Estate owned a "conclusive presumption" of abandonment and ownership, which could be confirmed through a quiet title action, that passed to it with the Wilt Deed.

**{¶29}** In *Corban*, the Ohio Supreme Court determined that in enacting the 1989 ODMA, the General Assembly created a "conclusive presumption" by establishing that a mineral rights holder had abandoned a severed mineral interest if the 20 year statutory period passed without a saving event. *Corban*, 149 Ohio St.3d at ¶ 25. A "conclusive presumption," the Court explained, is an "evidentiary device." *Id.* at ¶ 23. In the case of the 1989 ODMA, that evidentiary device applied to litigation seeking to quiet title to a dormant mineral interest. *Id.* at ¶ 26. The Court stated that "evidentiary rules (such as the conclusive presumption established by the 1989 law) are *procedural in nature*, and therefore, *changing them does not alter a vested substantive right*." (Emphasis added); *Id.* at ¶ 35.

**{¶30}** Comparing the *Corban* conclusive presumption to another evidentiary device further bolsters this notion. Res ipsa loquitur is also an evidentiary device.

*Deer v. River Valley Health Systems*, 4th Dist. No. 00CA20, 2001-Ohio-2662. "Res ipsa loquitur is an evidentiary device that allows a reasonable inference of negligence to be made based on circumstantial evidence." *Id.* One would not suggest that this is a property right. It is simply a means to prove something in the context of a lawsuit.

**{¶31}** It is clear from the Ohio Supreme Court's characterization, that a conclusive presumption is neither a property right nor a vested substantive right. It is simply an evidentiary device used in litigation. Therefore, any modification to, or "taking" of, the presumption cannot be held to be unconstitutional as alleged by Lower Valley.

**{¶32}** Given the Ohio Supreme Court's clear characterization of the conclusive presumption, a remand on this issue is unnecessary. Summary judgment in the Croskey Defendants' favor is proper.

**{¶33}** Accordingly, the Croskey Defendants' sole assignment of error has merit and is sustained.

**{¶34}** For the reasons stated above, the trial court's judgment is affirmed in part only insofar as it held that Lower Valley owned only a 1/3 interest in the oil and gas underlying the Section 22 Property. The remainder of the trial court's judgment is hereby reversed. Summary judgment is hereby entered in favor of the Croskey Defendants.

Waite J., concurs

Robb, P., J., concurs